**IN THE DISTRICT COURT OF THE UNITED STATES,**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

RECEIVED

2007 APR 13  P 4: 28

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

WALTER WREN WYATT, III            )
                                  )
    Plaintiff,                    )
                                  )
    v.                            ) CIVIL CASE NO.:
                                  )
MORTGAGE ELECTRONICS              )      1:07CV326-mht
REGISTRATION SYSTEMS, INC.;       )
R. JAMES NICHOLSON IN HIS CAPACITY )
AS SECRETARY OF VETERANS AFFAIRS; )
et. al.,                          )
                                  )
    Defendants.                   )

## NOTICE OF REMOVAL

Petitioner, R. James Nicholson, Secretary of Veterans Affairs, by and through

Leura G. Canary, United States Attorney for the Middle District of Alabama, respectfully

petitions for removal of this action from the Circuit Court of Coffee County, Alabama, to

the United States District Court for this District, and in support thereof, represent the

following:

1.      That Petitioner, R. James Nicholson, is a named Defendant in the above-

captioned civil action which is pending in the Circuit Court of Coffee County, Alabama,

Civil Action No. CV-06-275.  Copies of all process, pleadings, and orders in such action

and available to Defendant at the time of filing are attached hereto.

2.      That the above-captioned action is one which may be removed without

bond to this court pursuant to 28 U.S.C. §§ 1442(a)(1), for the reasons that this is a civil

action against an agency of the United States whereby an officer of the agency acting under color of such office has been sued in his official capacity.

WHEREFORE, Petitioner prays that said action be removed from the Circuit Court of Coffee County, Alabama.

DATED this 13th day of April, 2007.

LEURA G. CANARY
United States Attorney

By: _____

R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Attorney for Defendant
Post Office Box 197
Montgomery, AL 36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
**E-mail: rand.neeley@usdoj.gov**

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the foregoing upon counsel

for the plaintiffs, by mailing a copy of same, first class, postage prepaid, addressed as

follows:


Charles Bradford Stinson
515 Glover Avenue
Enterprise, AL 36330

Dated this the 13th day of April, 2007.

Assistant United States Attorney



# IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA

WYATT WALTER WREN, III        )
                    Plaintiff )
                              )
        V.                    )      Case No.: CV-2006-000275.00
                              )
MORTGAGE ELECTRONIC REGISTRATION SYS )
                              )
NICHOLSON R. JAMES            )
MELLOR NATALIE                )
MELLOR JOSHUAE                )
                  Defendants  )

## ORDER

UPON MOTION OF THE DEFENDANTS, JOSHUA MELLOR AND NATALIE MELLOR, THE DEFAULT AGAINST JAMES R. NICHOLSON IN HIS CAPACITY AS SECRETARY OF VETERANS AFFAIRS ENTERED MARCH 21, 2007, IS SET ASIDE FOR A PERIOD OF THIRTY (30) DAYS. HOWEVER, IF SAID DEFENDANT DOES NOT MAKE AN APPEARANCE OR FILE RESPONSIVE PLEADINGS WITHIN THAT TIME PERIOD, UPON MOTION OF THE PLAINTIFF, SAID DEFAULT SHALL BE RE-ENTERED.

DONE this 11th day of April, 2007

                            /s ROBERT W BARR
                            _____
                            CIRCUIT JUDGE



ELECTRONICALLY FILED
3/21/2007 1:55 PM
CV-2006-000275.00
CIRCUIT COURT OF
COFFEE COUNTY, ALABAMA
MICKEY COUNTS, CLERK

IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA

ENTERPRISE DIVISION

WALTER WREN WAYTT, III,

      PLAINTIFF,

VS.

MORTGAGE ELECTRONICS
REGISTRATION SYSTEMS, INC.,
R. JAMES NICHOLSON IN HIS
CAPACITY AS SECRETARY OF
VETERAN AFFAIRS; ET AL.,

      DEFENDANTS.

CASE NO.:   CV 2006-275

## *ORDER*

Upon Motion, Default is entered against R. James Nicholson in his capacity as Secretary of Veterans Affairs.  Default Judgment is not entered at this time.  Defendants Joshua Mellor and Natalie Mellor were served on March 14, 2007 and still have time to file their answer.

Depending on the responsive pleadings by Defendants Mellor or the each thereof, this Court will set this matter for final hearing at a later date.

The Clerk shall send a copy of this Order to all parties.

This the 21st day of March 2007.

/s/ Robert W. Barr
ROBERT W. BARR
Circuit Judge

IN THE CIRCUIT COURT FOR ENTERPRISE DIVISION,
COFFEE COUNTY, ALABAMA

**WALTER WREN WYATT, III**

    Plaintiff,

VS.

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,**
**R. JAMES NICHOLSON** in his capacity
as **SECRETARY OF VETERANS AFFAIRS;**
**Joshua Mellor, Natalie Mellor**
and **A-Z,** who are parties claiming an
interest in this action, whose identities
are otherwise unknown to the Plaintiff,
but whose names will be supplied by
amendment when ascertained,

    Defendants.

CASE NO. CV06-275



## AMENDED COMPLAINT TO SUBSTITUTE DEFENDANTS FOR UNKNOWN DEFENDANTS A & B

    COMES NOW Charles Bradford Stinson attorney for the Plaintiff and request the Court to substitute Joshua Mellor and Natalie Mellor for defendants A & B: based on the following facts:

1.    On 13th of October, 2006 Joshua and Natalie Mellor purchased the subject property from the Secretary of Veterans Affairs. That conveyance was recorded on November 1st, 2006 in OR Book 381, page 817 in the office of the Judge of Probate of Coffee County, Enterprise Division.

2.    As owners of the property Joshua Mellor and Natalie Mellor are necessary parties and have an interest in the outcome of this case.

3.    Plaintiff hereby incorporates by reference the original complaint filed on November 27, 2006 with the Coffee County Circuit Clerks Office. See attached copy.

Respectfully submitted, on this the 7th day of March, 2007.

CHARLES BRADFORD STINSON (STI022)
THE STINSON FIRM, LLC
Attorney for Plaintiff
515 Glover Avenue
Enterprise, AL 36330
(334) 393-0433

## CERTIFICATE OF SERVICE

I, Charles Bradford Stinson, hereby certify that I have served the above and foregoing motion to Mortgage Electronic Registration Systems, Inc. and R. James Nicholson in his capacity as Secretary of Veterans Affairs by placing a copy of the same in the United States Mail, postage pre-paid and properly addressed, on this the 7th day of March, 2007.

Mortgage Electronics Registration Systems, INC.
C/O The Corporation Company
2000 Interstate Park Drive Suite 204
Montgomery, Alabama 36109

Secretary of Veterans Affairs
C/O R. James Nicholson
810 Vermont Avenue, NW
Washington, D.C.  20420

OF COUNSEL

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

R. James Nicholson
Sec. VA
810 Vermont Ave. NW
Washington, DC 20420

W. Gibson

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ____ James W ____   ☐ Agent
☐ Address

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF THE SECRETARY

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7005 3110 0001 5724 9827

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

# IN THE CIRCUIT COURT FOR ENTERPRISE DIVISION, COFFEE COUNTY, ALABAMA

WALTER WREN WYATT, III

    Plaintiff,

VS.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
R. JAMES NICHOLSON in his capacity
as SECRETARY OF VETERANS AFFAIRS;
and A-Z, who are parties claiming an
interest in this action, whose identities
are otherwise unknown to the Plaintiff,
but whose names will be supplied by
amendment when ascertained,

    Defendants.

CASE NO.  CV06-275-28



## APPLICATION FOR ENTRY OF DEFAULT AND DEFAULT JUDGEMENT AND SUPPORTING AFFIDAVIT

    Comes Now Plaintiff, by Counsel, and requests that the Court enter a default against the Defendants, R. JAMES NICHOLSON in his capacity as SECRETARY OF VETERANS AFFAIRS, in the above entitled action, pursuant to Rule 55(b)(2), for failure to plead, answer or otherwise defend as set out in the affidavit hereto annexed.

    Plaintiff requests that a Default Judgment be entered against the Defendant.

    Plaintiff files herewith all necessary and supporting documentation for entry of default and default judgement against Defendant including the affidavit required by Rule 55(a), A.R.Civ.P.

    Respectfully submitted this the 6th day of March, 2007.

CHARLES BRADFORD STINSON
Attorney for the Plaintiff
515 Glover Avenue
Enterprise, AL 36330
(334)393-0433

STATE OF ALABAMA

COUNTY OF COFFEE

Charles Bradford Stinson, being duly sworn, deposes and says:

1. That I am the attorney of record for the plaintiff and have personal knowledge of the facts set forth in this affidavit.

2. That the Defendant foreclosed on the Plaintiff's property. Defendant has also failed to answer the Plaintiff's right of redemption demand which was received on October 24, 2006. See Exhibit A.

3. The Plaintiff has a statutory right of redemption on property located at 109 Pratt Drive, Enterprise, AL which was foreclosed on April 6, 2006.

4. That the defendant was duly served with the summons and complaint in this cause on December 18, 2006 by certified mail.

5. That more than 30 days have elapsed since the date on which the said defendant was served with the summons and complaint.

6. That this action is based upon Code of Alabama, 1975, § 6-5-252 and §6-5-256.

7. That the mortgage Foreclosure Deed reflects that the property in question was purchased by Mortgage Electronic Registration Systems, Inc. for the amount of $67,914.09. Exhibit B.

8. That the defendant has failed to answer or otherwise defend as to plaintiff's complaint, or serve a copy of any answer or other defense, which it might have upon the undersigned attorney of record for the plaintiff.

9. That this affidavit is executed by affiant herein in accordance with Rule 55 of the Alabama Rules of Civil Procedure, for the purpose of enabling the plaintiff to obtain an entry of default against the defendant, for its failure to answer or otherwise defend as to the plaintiff's complaint.

10. That the Defendant is not an infant or an incompetent person, or a member of the armed forces, and there has been no violation of the provisions of Chapter 19, Title 5, Code of Alabama, 1975.

_____
Charles Bradford Stinson

Sworn and Subscribed before me this the 6th day of March, 2007.

_____
Notary Public

MY COMMISSION EXPIRES
JAN. 3, 2011

## CERTIFICATE OF SERVICE

I, Charles Bradford Stinson, hereby certify that I have served the above and foregoing motion to Mortgage Electronic Registration Systems, Inc. and R. James Nicholson in his capacity as Secretary of Veterans Affairs by placing a copy of the same in the United States Mail, postage pre-paid and properly addressed, on this the 6th day of March, 2007.

Charles Bradford Stinson
Attorney for Plaintiff

Mortgage Electronics Registration Systems, Inc.
C/O The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109


Secretary of Veterans Affairs
C/O R. James Nicholson
810 Vermont Avenue, NW
Washington, D.C.  20420

*Exhibit A*

# THE STINSON FIRM, LLC
Attorneys at Law
515 Glover Avenue
Enterprise, AL 36330

Phone: (334) 393-0433
Fax:   (334) 393-2439

**Charles Bradford Stinson**
**Lori Madison Stinson**

October 13, 2006

Veterans Affairs
Attn: Secretary of Veterans Affairs
810 Vermont Avenue Northwest
Washington, DC 20420

Re: 109 Pratt, Enterprise, AL

Ladies and Gentlemen:

I am writing in reference to the above mentioned property.

Walter Wren Wyatt has contacted my office regarding redemption of this property. The property was sold on the Courthouse steps on April 11, 2006, and bought by Mortgage Electronic Registration Systems, Inc. MERS, Inc. transferred the referenced property to Secretary of Veterans Affairs, as evidenced by the enclosed deed.

Therefore, at this time, I am demanding a statement of debt and all lawful charges necessary to effect this redemption.

Thank you in advance for your cooperation.

Sincerely,

THE STINSON FIRM, LLC

Charles Bradford Stinson

enclosures 1

CBS/jw

Recorded In OFFREC BK 359 PG 530. 04/11/2006 10:26:50 AMB Tax Collected 3.00. Recording r-
William O. Gammill, Probate Judge; Coffee County, AL

Exhibit

PREPARED BY: Aaron Love
**MORRIS, SCHNEIDER & PRIOR, L.L.C.**
1587 Northeast Expressway
Atlanta, GA 30329
(770) 234-9181

MSP FILE No.  AL0604697AL/DAJ
LOAN NO.: 8439101638

STATE OF ALABAMA
COUNTY OF COFFEE ENTERPRISE DIVISION

## NO TAX COLLECTED

### MORTGAGE FORECLOSURE DEED

KNOW ALL MEN BY THESE PRESENTS, That:

WHEREAS, heretofore on February 14, 2001, Walter Wren Wyatt III and wife Jennifer June Wyatt, Party of the First Part, executed a certain mortgage to Mortgage Electronic Registration Systems, Inc. is acting solely as nominee for Synovus Mortgage Corp. its successors and assigns, which said mortgage is recorded in Real Property Book OFFREC 147, Page 526, in the Office of the Judge of Probate of Coffee County, Alabama (Enterprise Division) ; and

WHEREAS, default in the payment of the indebtedness secured by said mortgage, and Mortgage Electronic Registration Systems, Inc. did declare all of the indebtedness secured by the said mortgage due and payable and said mortgage subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage, in accordance with the terms thereof, by publication in the The Enterprise Ledger, a newspaper of general circulation in Coffee County, Alabama, in its issues of 03/17, 03/24, 03/31; and

WHEREAS, on April 6, 2006, the day on which the foreclosure sale was due to be held under the terms of said notice, during the legal hours of sale, said foreclosure was duly and properly conducted and the person conducting the sale on behalf of the mortgagee did offer for sale and sell a public outcry, in front of the main entrance of the Courthouse, Coffee County, Alabama (Enterprise Division), the property hereinafter described; and

WHEREAS, the highest and best bid obtained for the property described in the aforementioned mortgage was the bid of Mortgage Electronic Registration Systems, Inc. in the amount of SIXTY-SEVEN THOUSAND NINE HUNDRED FOURTEEN AND 09/100 DOLLARS ($ 67,914.09); which the person conducting the sale on behalf of the mortgagee offered to credit on the indebtedness secured by said mortgage, and said property was thereupon sold to Mortgage Electronic Registration Systems, Inc.; and

WHEREAS, Joan Etheridge, conducted said sale and acted as auctioneer thereat, under and pursuant to an appointment as such by the Party of the Second Part; and

WHEREAS, said mortgage expressly authorized the mortgagee or auctioneer or any person conducting said sale to execute to the purchaser at said sale a deed to the property so purchased.

NOW, THEREFORE, in consideration of the premises and the credit of SIXTY-SEVEN THOUSAND NINE HUNDRED FOURTEEN AND 09/100 DOLLARS ($ 67,914.09), on the indebtedness secured by said mortgage, the parties of the First Part and the Party of the Second Part, both acting by and through the undersigned as their duly constituted and appointed attorney-in-fact and auctioneer at said sale, do hereby grant, bargain, sell and convey unto Mortgage Electronic Registration Systems, Inc., and its successors and assigns, the following described real property, situated in Coffee County, Alabama, to-wit:

Lot 5, Block "C", First Addition to Omni Subdivision, an addition to the City of Enterprise, Coffee County, Alabama, as shown on plat of same as recorded in Plat Book 3, Page 67, Office of the Judge of Probate, Enterprise, Coffee County, Alabama, together with all improvements situated thereon.

SOURCE OF TITLE: Book 149 Page 362

TO HAVE AND TO HOLD the above described property unto Mortgage Electronic Registration Systems, Inc., its successors and assigns forever, subject however to the statutory right of redemption on the part of those entitled to redeem as provided by the laws of the State of Alabama; also subject to ad valorem taxes, easements and/or restrictions of record, prior liens and/or assessments of record.

IN WITNESS WHEREOF, Walter Wren Wyatt III and wife Jennifer June Wyatt and Mortgage Electronic Registration Systems, Inc. have set their hands and seals by their said attorney-in-fact and auctioneer at said sale on the 6th day of April, 2006.

BY: _____
AS: Auctioneer and Attorney-in-fact

STATE OF ALABAMA
COUNTY OF COFFEE

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Jean Etheridge, whose name as attorney-in-fact and auctioneer for Walter Wren Wyatt III and wife Jennifer June Wyatt and Mortgage Electronic Registration Systems, Inc., is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day, that being informed of the contents of said conveyance, he/she, in his/her capacity as such attorney-in-fact, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 11th day of April 2006.

_____
NOTARY PUBLIC
My Commission Expires: My Commission Expires December 14, 2009

Grantee Name / Send tax notice to:
Washington Mutual Bank (FNFS)
    ATTN: Paul Bruhs
    1270 Northland Drive
    Mendota Height, MN 55120

IN THE CIRCUIT COURT FOR ENTERPRISE DIVISION,
COFFEE COUNTY, ALABAMA

WALTER WREN WYATT, III

    Plaintiff,

VS

CASE NO. C-VO6-275

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
R. JAMES NICHOLSON in his capacity
as SECRETARY OF VETERANS AFFAIRS;
and A-Z, who are parties claiming an
interest in this action, whose identities
are otherwise unknown to the Plaintiff,
but whose names will be supplied by
amendment when ascertained,

    Defendants.

## COMPLAINT

1. This action is brought and the Court's jurisdiction is invoked pursuant to the provisions of the Code of Alabama, 1975, § 6-5-252 and §6-5-256.

2. On February 14, 2001, Plaintiff and Jennifer June Wyatt executed a mortgage to Mortgage Electronic Registration Systems, Inc. That mortgage was recorded in Official Records Book 147, pages 526-527 in the Office of the Judge of Probate, Enterprise, Coffee County, Alabama. A copy of which is attached as Exhibit A.

3. The mortgage was secured by the house and property at 109 Pratt Drive, Enterprise, Alabama, which is more particularly described as follows:

   Lot 5, Block "C", First Addition to Omni Subdivision, an addition to the City of Enterprise, Coffee County, Alabama, as shown on plat of same as recorded in Plat Book 3, Page 67, Office of the Judge of Probate, Enterprise, Coffee County, Alabama, together with all improvements situated thereon.

4. On April 6, 2006, there was a foreclosure on the above described property. Mortgage Electronic Registration Systems, Inc (MERS) purchased the property at the Foreclosure sale as evidenced by Foreclosure Deed recorded on April 11, 2006 in the office of the Judge of Probate, Enterprise, Coffee County, Alabama. A copy of which is attached as Exhibit B.

5. On April 17, 2006 Defendant MERS conveyed that property to Defendant Secretary of Veterans Affairs. That conveyance is evidenced by the deed recorded in Official Records Book 354, Page 182, in the office of the Judge of Probate, Enterprise, Coffee County, Alabama. A copy of which is attached as Exhibit C.

6.    Defendants A-Z are parties claiming an interest in this action, whose identities are otherwise unknown to the Plaintiff, but whose names will be supplied by amendment when ascertained.

7.    As the mortgagor, Plaintiff has a statutory right to redeem.

8.    As a person desiring to redeem, Plaintiff has a statutory right to make demand of the purchaser or its transferees for a statement in writing of the debt and all lawful charges and the purchaser or its transferees shall issue the statement within ten (10) days.

9.    Plaintiff desires a statement of the debt so that he may redeem the above described property.

10.   On September 15, 2006, a demand from Plaintiff to Defendant MERS for a statement of debt and lawful charges was claimed by its agent as evidenced by the return receipt. A copy of which is attached as Exhibit D.

11.   On October 13, 2006, a demand from Plaintiff to Defendant Secretary of Veterans Affairs for a statement of debt and lawful charges was claimed by its agent as evidenced by the return receipt. A copy of which is attached as Exhibit E.

      WHEREFORE, these premises considered, Plaintiffs prays the Court as follows:

A.    That the Court order the Defendants to provide a statement of debt.

B.    That the Court order the Defendants to not include any claims for improvements in the statement of debt because the statement of debt was not provided within ten (10) days as required by Alabama Code, § 6-5-252.

C.    That the Court also order the Defendants to not include any interest or other charges in the redemption amount because the statement of debt was not provided within ten (10) days.

D.    That the Court settle and adjust all the rights and equities of the parties.

E.    That the Court award Plaintiff such other, further or different relief as may be just and proper.

      Respectfully submitted, on this the 27th day of November, 2006.

      _____
      CHARLES BRADFORD STINSON (STI022)
      THE STINSON FIRM, LLC
      Attorney for Plaintiff
      515 Glover Avenue
      Enterprise, AL 36330
      (334)393-0433

Mar 15 2007 11:45     THE STINSON FIRM                  334 393 2439                    P.2

Exhibit A

Return To:

[recording stamp]
OFFIC    167    921
Recorded in Above Book and Page
02/21/2001 08:25:03 AM
William B. Gammill
Probate Judge
Coffee County, AL

Mortgage Tax       29.45
Recording Fee      22.00
TOTAL             151.45

[Space Above This Line For Recording Data]

# MORTGAGE

MIN  1000856-0000333384-9

NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   February 14, 2001
together with all Riders to this document.
(B) "Borrower" is WALTER WREN WYATT, III  AND WIFE, JENNIFER JUNE WYATT

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

503WYATT333384                      333384                                    0
ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 2001 1/01

-6A(AL) (0005).01
Page 1 of 15     MW 05/00.01
VMP MORTGAGE FORMS - (800)521-7291

(D) "Lender" is SYNOVUS MORTGAGE CORP.

Lender is a CORPORATION
organized and existing under the laws of       ALABAMA
Lender's address is 800 SHADES CREEK PKWY, STE 350, BIRMINGHAM, AL 35209

(E) "Note" means the promissory note signed by Borrower and dated    February 14, 2001
The Note states that Borrower owes Lender Sixty Six Thousand Three Hundred and
no/100                                         Dollars
(U.S. $66,300.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     March 1, 2031.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

503WYATT333384              333384                          0
-6(AL) (0008).01              Page 2 of 15                        Form 3001 1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY          of          COFFEE COUNTY, AL
    [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

Lot 5, Block "C", First Addition to Omni Subdivision, an addition to the City of Enterprise, Coffee County, Alabama, as shown on plat of same as recorded in Plat Book 3, Page 67, Office of the Judge of Probate, Enterprise, Coffee County, Alabama, together with all improvements situated thereon.

Parcel ID Number: 15-06-14-1-000-2.088                        which currently has the address of
109 PRATT DRIVE                                                           [Street]
ENTERPRISE                                        [City] , Alabama     36330    [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
        1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

503WYATT333384                      333384                                           0
    -6B(AL) (0008)R1                Page 3 of 15                            Form 3001 1/01

04/06/2007 11:25 3342671965 CSC        VA REGIONAL COUNSEL        PAGE 18/41
Case 1:07-cv-00326-MHT-CSC    Document 1-2    Filed 04/13/2007    Page 17 of 36

Mar 15 2007 11:45      THE STINSON FIRM              334 393 2439           p.5

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

503WYATT333384                           333384                                    0

@D -4N(AL) 0000 01               Page 4 of 15         Initials                Form 3001 1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

503WYATT333384

333384

Page 5 of 15

0

Form 3001 1/01

04/06/2007 11:25  3342714505  CSC                    VA REGIONAL COUNSEL                    PAGE 20/41
Case 1:07-cv-00326-MHT-CSC   Document 1-2   Filed 04/13/2007   Page 19 of 36

Mar 15 2007 11:46    THE STINSON FIRM              334 393 2439              p.7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

503WYATT333384                      333384                                          0

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

503MYATT333384                      333384                                      0

-6B(AL) 0005).01                     Page 7 of 15                     Form 3001 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

503WYATT333384    333384    0

...EN(AL) ......    Page 9 of 15    Form 3001 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

503WYATT333384    333384    Initials    0
GA(AL) (0008).04    Page 9 of 15    Form 3001 1/01

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

503WYATT333384    333384    0

-6S(AL) (0005).01    Page 70 of 18    Initials    Form 3001 1/01

OFFICE 147 535

04/06/2007 14:25 3342718585 VA REGIONAL COUNSEL PAGE 25/41
Case 1:07-cv-00326-MHT-CSC Document 1-2 Filed 04/13/2007 Page 24 of 36

Mar 15 2007 11:47 THE STINSON FIRM 334 393 2439 p.12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

503WYATT333384                    333384                                         0

ALABAMA--Single Family...                Page 11 of 18                    Form 3001 7/01

require in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

503MYATT333384                     333384                              0
ΦΙΛ(AL) coove.01                    Page 13 of 16           Form 3001 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in COFFEE County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

503MYATT333384

(AL) 0001.01

333384

Page 12 of 15

Form 3001 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            _____(Seal)
                                             WALTER WREN WYATT, III         -Borrower

_____            _____(Seal)
                                             JENNIFER JUNE WYATT           -Borrower

_____(Seal)              _____(Seal)
                 -Borrower                                               -Borrower

_____(Seal)              _____(Seal)
                 -Borrower                                               -Borrower

_____(Seal)              _____(Seal)
                 -Borrower                                               -Borrower

503WYATT333384                    333384                      0

@D-6R(AL) (0008).01                Page 14 of 18                Form 3001 3/01

STATE OF ALABAMA, COFFEE County ss:

On this 14th day of February , 2001
Kathy P. Hutto
a Notary Public in and for said county and in said state, hereby certify that WALTER WREN WYATT, III AND WIFE, JENNIFER JUNE WRIGHT

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this 14th day of February, 2001

My Commission Expires: 1/26/03

Notary Public Kathy P. Hutto

Prepared By:
MARCELLA F. ROGERS

503WYATT333384

333384

Page 16 of 16

Form 3001 1/01

D

OFREG 147 548

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPART-MENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 14th day of February, 2001, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to
SYNOVUS MORTGAGE CORP., CORPORATION

(herein "Lender") and covering the Property described in the Security Instrument and located at
109 PRATT DRIVE,ENTERPRISE,AL 36330

[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the

MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

-538U (9808)    1/95
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    MW 05/97    Initials: 

Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 17 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

Page 2 of 3

04/05/2007 11:26  3343719005        VA REGIONAL COUNSEL        PAGE  32/41
Case 1:07-cv-00326-MHT-CSC    Document 1-2    Filed 04/13/2007    Page 31 of 36

Mar 15 2007 11:49      THE STINSON FIRM            334 393 2439            P.19

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow
assumption of this loan, a processing fee may be charged by the loan holder or its
authorized agent for determining the creditworthiness of the assumer and subsequently
revising the holder's ownership records when an approved transfer is completed. The
amount of this charge shall not exceed the maximum established by the Department of
Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States
Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the
assumer hereby agrees to assume all of the obligations of the veteran under the terms of the
instruments creating and securing the loan. The assumer further agrees to indemnify the
Department of Veterans Affairs to the extent of any claim payment arising from the
guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and
Assumption Policy Rider.

| _____ -Borrower | _____ -Borrower |
|  | WALTER WREN WYATT, III |
|  | _____ -Borrower |
| _____ -Borrower | JENNIFER JUNE WYATT |
| _____ -Borrower | _____ -Borrower |
| _____ -Borrower | _____ -Borrower |

Page 3 of 3

Exhibit B

Recorded In OFFREC BK 350 PG 550, 04/11/2006 18:26:50 AM No Tax Collected - - -
William O. Gammill, Probate Judge, Coffee County AL

PREPARED BY: KARIN LUTZ
MORRIS, SCHNEIDER & PRIOR, L.L.C.
1587 Northeast Expressway
Atlanta, GA 30329
(770) 234-9181

MSP FILE NO.___02.0604697/AL/DAJ
LOAN NO.: 8439101638

## NO TAX COLLECTED

STATE OF ALABAMA
COUNTY OF COFFEE ENTERPRISE DIVISION

## MORTGAGE FORECLOSURE DEED

KNOW ALL MEN BY THESE PRESENTS, That:

WHEREAS, heretofore on February 14, 2001, Walter Wren Wyatt III and wife Jennifer June Wyatt, Party of the First Part, executed a certain mortgage to Mortgage Electronic Registration Systems, Inc. is acting solely as nominee for Synovus Mortgage Corp. its successors and assigns, which said mortgage is recorded in Real Property Book OFFREC 147, Page 526, in the Office of the Judge of Probate of Coffee County, Alabama (Enterprise Division) ; and

WHEREAS, default in the payment of the indebtedness secured by said mortgage, and Mortgage Electronic Registration Systems, Inc. did declare all of the indebtedness secured by the said mortgage due and payable and said mortgage subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage, in accordance with the terms thereof, by publication in the The Enterprise Ledger, a newspaper of general circulation in Coffee County, Alabama, in its issues of 03/17, 03/24, 03/31; and

WHEREAS, on April 6, 2006, the day on which the foreclosure sale was due to be held under the terms of said notice, during the legal hours of sale, said foreclosure was duly and properly conducted and the person conducting the sale on behalf of the mortgagee did offer for sale and sell a public outcry, in front of the main entrance of the Courthouse, Coffee County, Alabama (Enterprise Division), the property hereinafter described; and

WHEREAS, the highest and best bid obtained for the property described in the aforementioned mortgage was the bid of Mortgage Electronic Registration Systems, Inc. in the amount of SIXTY-SEVEN THOUSAND NINE HUNDRED FOURTEEN AND 09/100 DOLLARS ($ 67,914.09); which the person conducting the sale on behalf of the mortgagee offered to credit on the indebtedness secured by said mortgage, and said property was thereupon sold to Mortgage Electronic Registration Systems, Inc.; and

WHEREAS, John Etheridge, conducted said sale and acted as auctioneer thereat, under and pursuant to an appointment as such by the Party of the Second Part; and

WHEREAS, said mortgage expressly authorized the mortgagee or auctioneer or any person conducting said sale to execute to the purchaser at said sale a deed to the property so purchased.

NOW, THEREFORE, in consideration of the premises and the credit of SIXTY-SEVEN THOUSAND NINE HUNDRED FOURTEEN AND 09/100 DOLLARS ($ 67,914.09), on the indebtedness secured by said mortgage, the parties of the First Part and the Party of the Second Part, both acting by and through the undersigned as their duly constituted and appointed attorney-in-fact and auctioneer at said sale, do hereby grant, bargain, sell and convey unto Mortgage Electronic Registration Systems, Inc., and its successors and assigns, the following described real property, situated in Coffee County, Alabama, to-wit:

MSP FILE NO. 120604697AL/DAJ
LOAN NO.: 8439101638

Lot 5, Block "C", First Addition to Omni Subdivision, an addition to the City of Enterprise, Coffee County, Alabama, as shown on plat of same as recorded in Plat Book 3, Page 67, Office of the Judge of Probate, Enterprise, Coffee County, Alabama, together with all improvements situated thereon.

SOURCE OF TITLE: Book 149 Page 162

TO HAVE AND TO HOLD the above described property unto Mortgage Electronic Registration Systems, Inc., its successors and assigns forever; subject however to the statutory right of redemption on the part of those entitled to redeem as provided by the laws of the State of Alabama; also subject to ad valorem taxes, easements and/or restrictions of record, prior liens and/or assessments of record.

IN WITNESS WHEREOF, Walter Wren Wyatt III and wife Jennifer June Wyatt and Mortgage Electronic Registration Systems, Inc. have set their hands and seals by their said attorney-in-fact and auctioneer at said sale on the 6th day of April, 2006.

BY: _____
AS: Auctioneer and Attorney-in-fact

STATE OF ALABAMA
COUNTY OF COFFEE

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Jean Etheridge, whose name as attorney-in-fact and auctioneer for Walter Wren Wyatt III and wife Jennifer June Wyatt and Mortgage Electronic Registration Systems, Inc., is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day, that being informed of the contents of said conveyance, he/she, in his/her capacity as such attorney-in-fact, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 11th day of April, 2006.

_____
NOTARY PUBLIC
My Commission Expires:    My Commission Expires December 14, 2009

Grantee Name / Send tax notice to:
Washington Mutual Bank (FNFS)
    ATTN: Paul Brulla
    1270 Northland Drive
    Mendota Height, MN 55120

William O. Gammill, Probate Judge, Coffee Court.

Prepared by: Jason Lutz
MORRIS, SCHNEIDER & PRIOR, L.L.C.
Attorneys and Counselors at Law
1587 Northeast Expressway
Atlanta, GA 30329

**NO TAX COLLECTED**

THE STATE OF ALABAMA
COUNTY OF COFFEE
ENTERPRISE DIVISION

MSP FILE NO: 802.0604697AL
LOAN NO: 8439101638/Wyatt
VA CASE NO: 222260537279

SOURCE OF TITLE:
Deed Book: 149
Page: 362

Exhibit C

## SPECIAL WARRANTY DEED

FOR VALUABLE CONSIDERATION to the undersigned paid by the Grantee herein, the receipt of which is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., whose principal place of business is located at 1270 Northland Drive, Mendota Height, MN, 55120, (hereinafter called the Grantor) has granted, bargained and sold, and does by these presents grant, bargain, sell and convey unto the SECRETARY OF VETERANS AFFAIRS, its successors and/or assigns, (hereinafter called the Grantee), the following described property situated in Coffee County, Alabama:

Lot 5, Block "C", First Addition to Omni Subdivision, an addition to the City of Enterprise, Coffee County, Alabama, as shown on plat of same as recorded in Plat Book 3, Page 67, Office of the Judge of Probate, Enterprise, Coffee County, Alabama, together with all improvements situated thereon.

The conveyance is made subject to unpaid taxes and assessments, if any, and to any outstanding rights of redemption from foreclosure sale.

No word, words, or provisions of this instrument are intended to operate as or imply covenants or warranty except the following: Grantor does hereby specially warrant the title to said property against the lawful claims of all persons claiming by, through or under the Grantor.

TO HAVE AND TO HOLD, the above described property together with all rights and privileges incident or appurtenant thereto, unto the said, SECRETARY OF VETERANS AFFAIRS, its successors and/or assigns, forever.

No Tax Collected 3.00, Recording Fee 15.00, TOTAL 18.00

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., has caused this conveyance to be executed in its name by its undersigned officer(s), this ___17th___ day of ___April___, 20__06__.

                                    MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

ATTEST:

By: _____            By: _____
TITLE: Chris Anderson                      TITLE:  **Rick Wilken**
**Assistant Secretary**                       Vice President
                                              (Corporate Seal)

THE STATE OF ___MN___
COUNTY OF ___Dakota___

I, the undersigned Notary Public in and for said State and County, do hereby certify that ___Rick Wilken___ and ___Chris Anderson___ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., are signed to the foregoing conveyance and who are known to me, acknowledged before me on this day that, being informed of the contents of this conveyance, they, as such officers and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 17th day of ___April___ 20__06__.

_____
NOTARY PUBLIC
My Commission Expires:

BETTE J. PETERSON
NOTARY PUBLIC-MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2010

1200 Rec
600 Spec
18.00

Mar 15 2007 11:50    THE STINSON FIRM         334 393 2439              p.24

Exhibit D

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name )  C. Date of Delivery<br> 9-19-0 |
| 1. Article Addressed to:<br><br>Mortgage Electronic Registration<br>Systems, Inc.<br>c/o The Corporation Company<br>2000 Interstate Park Drive<br>Ste 204<br>Montgomery, Al 36109 gr | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| | 3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☑ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label)  7005 3110 0001 5725 0991 | |
| PS Form 3811, February 2004  Domestic Return Receipt | 102595-02-M-1540 |